UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LUCIA GONCALVES OLIVEIRA and ADELIO BENTO DE OLIVEIRA, <br><br> Petitioners, <br><br> v. <br><br> TODD M. LYONS et al., <br><br> Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) )   Civil No. 25-12859-LTS |

ORDER ON CONSOLIDATED PETITIONS
FOR WRITS OF HABEAS CORPUS (DOC. NO. 1)

October 24, 2025

SOROKIN, J.

Lucia Goncalves Oliveira and Adelio Bento de Oliveira (together, "Petitioners") are citizens of Brazil subject to supervision by Immigration and Customs Enforcement ("ICE") that includes GPS location monitoring. They have filed petitions seeking writs of habeas corpus under 28 U.S.C. § 2241 in which they each assert the same three claims.[1] See Doc. No. 1. As the Court will explain, Petitioners primarily seek relief that is not available to them through § 2241. They have not established entitlement to the type of relief that is within this Court's core habeas jurisdiction. The petitions are, therefore, DENIED.

---

[1] The petitions were filed separately. Goncalves Oliveira's was assigned to this Court under the case number appearing in the caption above. Bento de Oliveira's was assigned to Judge Gorton under case number 25-cv-12862. The matters were later consolidated, at the parties' request, with Bento de Oliveira's matter reassigned to this Court because it was the later-opened action. This Order resolves both petitions but is docketed only in Goncalves Oliveira's case, which has been designated the lead case for purposes of the Court's files and electronic docketing system.

I.   BACKGROUND[2]

Petitioners are a married couple who have lived together, with their son, in the United States since 2021. Doc. No. 1 ¶ 21. When they crossed the border from Mexico, they were arrested and detained by U.S. Customs and Border Protection ("CBP"). Id. ¶ 22. CBP released them, however, placing them in an Alternatives to Detention program and initiating removal proceedings. Id. ¶ 23. For the next few years, Petitioners complied with monitoring requirements and attended regular check-in appointments. Id. In August 2023, Goncalves Oliveira was the victim of a robbery and assault in Boston, and she cooperated with the police investigation that followed. Id. ¶ 25. In the wake of that event, Petitioners hired a lawyer to represent them in their removal proceedings and assist them in applying for a U Visa (a visa available to certain crime victims who assist law enforcement). Id.; see Doc. No. 10 at 3.

The removal proceedings progressed to a full hearing before an immigration judge ("IJ") in August 2024. Id. ¶ 26. The IJ ordered Petitioners removed, and Petitioners appealed. See id. ¶ 27; Doc. No. 8-1 ¶¶ 12–13; Doc. No. 10 at 3. In January 2025, the Board of Immigration Appeals ("BIA") dismissed the appeal. Doc. No. 8 ¶ 14; see Doc. No. 10 at 3. To this point, Petitioners were represented by the same lawyer.

---

[2] The background is described in the petitions, Petitioners' recent show-cause memorandum, and a declaration from Assistant Field Office Director Keith Chan filed in support of the respondents' opposition. Chan's summary is based on his review of records, not on personal knowledge of the underlying events. See Doc. No. 8 ¶¶ 3–4. His declaration contains at least one legal conclusion that is proven inaccurate by a fact he states in the same paragraph. See id. ¶ 5 (stating Petitioners are "not in ICE custody or otherwise detained," but immediately acknowledging they are subject to supervision that includes "GPS monitoring"); cf. Flores Salazar v. Moniz, No. 25-cv-11159, 2025 WL 1703516, at *5 (D. Mass. June 11, 2025) (explaining, in case featuring testimony from Chan, that petitioner on "ankle bracelet containing a device that continuously tracks his location using GPS" is "in custody" for habeas purposes). The Court relies on Petitioners' submissions wherever possible, supplemented by Chan's declaration only insofar as it fleshes out events Petitioners in some way acknowledge.

Thereafter, Petitioners hired a new lawyer and learned that their former counsel had not initiated the U Visa application process on their behalf.[3]  In early March 2025, Petitioners were placed on GPS ankle monitors as a new condition of their supervision by ICE.  Doc. No. 1 ¶ 28; Doc. No. 8 ¶ 15.  Through their new lawyer, Goncalves Oliveira applied for a U Visa later in March.  Doc. No. 1 ¶ 30.  In early April, ICE notified Petitioners of a departure plan providing them four weeks to self-deport.  Doc. No. 8 ¶ 16.  Petitioners took steps to comply, but they also filed motions asking the BIA to reopen their removal proceedings and to stay the order of removal.  Doc. No. 8 ¶¶ 16–17; Doc. No. 10 at 3.  The BIA stayed their removal pending its consideration of the motion to reopen, delaying ICE's departure timeline.  Doc. No. 8 ¶ 17.

On August 7, however, the BIA denied the motion to reopen and directed Petitioners to self-deport.  Id. ¶ 20.  Petitioners filed a second pair of motions asking the BIA again to stay removal and reopen their removal proceedings on September 25, 2025.  Doc. No. 1 ¶ 32; Doc. No. 8 ¶ 21; Doc. No. 10 at 3.  This time, however, the BIA promptly denied the motion to stay.  Doc. No. 1 ¶ 34; Doc. No. 8 ¶ 22.  ICE set a new self-deportation deadline of October 3.  Doc. No. 1 ¶ 31; Doc. No. 8 ¶ 23; see Doc. No. 10 at 3–4.  The record before the Court does not describe any effort by Petitioners, at any point during the above-described proceedings, to seek a stay or review of their removal orders in the First Circuit.

On October 2, Petitioners filed their habeas petitions, both of which resulted in orders staying their removal pending resolution of their petitions.  See Doc. No. 4.  According to the parties' filings, Petitioners' second motion to reopen remains pending before the BIA, and their U Visa application is pending with U.S. Citizenship and Immigration Services ("USCIS").

---

[3] Goncalves Oliveira would be the U Visa applicant, and Bento de Oliveira a "rider" or derivative beneficiary.  Doc. No. 10 at 3; cf. Doc. No. 8 ¶ 18 (describing family-member petition filed on behalf of Bento de Oliveira in May 2025).

In this Court, Petitioners assert claims arising under the Fifth Amendment, the federal statute governing detention following an order of removal, and the Administrative Procedure Act.  Doc. No. 1 ¶¶ 35–49.  All three claims expressly target ICE's efforts to remove Petitioners while they still have pending requests before the BIA and USCIS.  Id.  They do not directly challenge the legality of ICE's supervision of them pending removal or their placement on GPS monitoring.  Id.  Though the petitions conclude with requests for their immediate release, id. at 11 (Prayer for Relief (4)), Petitioners also seek an injunction preventing their removal until USCIS has granted (or denied) the pending U Visa petition and the BIA has granted (or denied) the second motion to reopen the underlying removal proceedings, id. (Prayer for Relief (5)).

The respondents urge the Court to deny the petition.  Doc. No. 7.  They argue Petitioners are lawfully detained under conditions and for reasons "rationally related to the government's legitimate interest in monitoring" noncitizens with "final orders of removal," and they characterize the petitions as efforts to secure relief from the removal orders that is beyond what this Court, in this context, can provide.[4]  Id. at 2, 5–8.  After reviewing the opposition memorandum, the Court ordered Petitioners to show cause why it should not deny them relief "for the reasons identified by the respondents."  Doc. No. 9.  Petitioners timely answered the show-cause Order and addressed the respondents' arguments.  Doc. No. 10.  Having considered the parties' submissions, the Court resolves the petitions on the papers.[5]

---

[4] The respondents also "dispute that Petitioner[s] [are] currently in 'custody' or detention for purposes of habeas relief."  Doc. No. 7 at 5.  This Court has explained elsewhere that conditions like GPS monitoring, which restrict a person's liberty in significant ways not experienced by members of the general public, amount to "custody" for habeas purposes.  See Flores Salazar, 2025 WL 1703516, at *5 (citing decisions by two other judges in this District recognizing the same principle).  The record establishes that Petitioners are subject to such conditions.

[5] Though Petitioners requested oral argument in their show-cause response, Doc. No. 10 at 1, the Court finds no further argument is necessary to resolve the questions properly before it here.

4

II.   DISCUSSION

The jurisdiction of federal district courts where habeas corpus is invoked to challenge immigration detention is limited.  For starters, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973); see also Munaf v. Geren, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention.").  Where a petitioner seeks relief that "falls outside the scope of the writ as it was understood when the Constitution was adopted," her claims are beyond a federal court's core habeas jurisdiction.  Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 119 (2020).  The Supreme Court has "rejected the use of habeas" where petitioners sought orders "requiring them to be brought to this country," permitting them "to remain lawfully in the United States," vacating a removal order, and requiring an "opportunity to apply for asylum and other relief from removal."  Id. at 118–19 (citation modified); cf. López López v. Charles, No. 20-cv-10145-DJC, 2020 WL 419598, at *3 (D. Mass. Jan. 26, 2020) (discussing limits on habeas jurisdiction and finding they precluded relief where petitioner sought stay of removal pending efforts to reopen removal proceedings and secure relief from final removal order).

The Immigration and Nationality Act ("INA") places additional restrictions on judicial review where orders of removal are involved.  Challenges to such orders generally may be pursued only by petitioning a court of appeals—not in actions filed in federal district courts.  8 U.S.C. § 1252(a)(5); see also § 1252(b)(9) (requiring consolidation "of all questions of law and fact . . . arising from any action taken or proceeding brought to remove a [noncitizen] from the United States" in a single petition for judicial review by the court of appeals, and specifying "no court shall have jurisdiction, by habeas corpus . . . to review . . . such questions of law or fact").  Challenges to denials of discretionary relief from removal are often beyond the jurisdiction of

any federal court. § 1252(a)(2)(B). The jurisdiction-limiting provisions of the INA further restrict the availability of injunctive relief concerning the implementation of a final order of removal. See § 1252(f)(2).

These principles bar Petitioners' efforts to secure from this Court, in this case, an order "[e]njoin[ing] Respondents from removing Petitioner[s] without first providing [them] with sufficient time to see [the] U Visa Petition and Motion to Reopen through."[6] Doc. No. 1 at 11. Such relief is beyond the traditional scope of habeas review. It does not arise from a challenge to the legality of the fact or duration of Petitioners' custody. Rather, it invites this Court to issue an order effectively staying their final orders of removal—orders the BIA already stayed once and then, after deciding Petitioners (acting through new counsel) had not established that reopening of their removal proceedings was warranted, declined to stay again. The INA's limitations on judicial review do not empower this Court to enter such an order, nor do they allow this Court to review Petitioners' challenges to "action[s] taken . . . to remove [them] from the United States" or the respondents' decisions "to execute removal orders" against them. § 1252(b)(9), (g).

The recent show-cause response by Petitioners underscores the extent to which their central focus in this action is obtaining "a stay of removal" pending decisions on their motion to reopen and U Visa application, not securing release from GPS monitoring or other conditions of their supervision. Doc. No. 10 at 2; see also id. at 5 (arguing their removal, not their GPS monitoring, "while they are seeking relief from USCIS and through a Motion to Reopen . . . would be arbitrary and capricious under the APA"); id. at 7 (arguing their removal, not their GPS

---

[6] Securing USCIS's approval of a U Visa would not alone forestall Petitioners' removal; an order from the BIA or IJ reopening the removal proceedings or cancelling the removal orders would also be required. See 8 C.F.R. § 214.14(c)(1)(ii), (5)(i) (explaining filing of U Visa application "has no effect on ICE's authority to execute a final order" of removal, and its approval does not automatically cancel removal orders "issued by an immigration judge").

monitoring, before a visa decision "violates due process"); id. at 10 (arguing "[s]tay of removal," not release from GPS monitoring, "is necessary to remedy the harm Respondents caused Petitioners by violating their rights to due process").[7] Petitioners' recourse in these circumstances lies with the Court of Appeals, not this Court. See Nken v. Holder, 556 U.S. 418, 422–26 (2009) (discussing authority of Courts of Appeals to enter orders staying removal pending their review of a removal order, including after BIA denial of stay and motion to reopen).

Petitioners do not meaningfully develop any challenge to the lawfulness of their GPS monitoring (the "custody" to which they are presently subjected). See Doc. No. 1 ¶ 36 (citing in passing Zadvydas v. Davis, 533 U.S. 678 (2001), which concerns post-removal-order due process rights of noncitizens); Doc. No. 10 at 2 (same). For reasons ably articulated by the respondents, such a claim fails in the circumstances presently before the Court. See Doc. No. 7 at 5–7 (asserting detention here is reasonable, has not been unreasonably prolonged by respondents, and is likely to end in the foreseeable future); see also López López, 2020 WL 419598, at *4 (dismissing due process claim by petitioner on post-removal-order GPS monitoring).

---

[7] To the extent Petitioners rely on cases arising before Thuraissigiam where lower federal courts extended habeas jurisdiction in analogous circumstances, such decisions are not persuasive in light of the Supreme Court's intervening analysis. A more recent decision Petitioners cite is inapposite. A Vermont district judge ordered a petitioner's immediate release from detention after determining that ICE had interfered with the petitioner's ability to complete a visa application by intentionally arresting them outside a facility where they were scheduled for biometric screening required for the application, before the screening could occur. See Portillo Vasquez v. Turek, No. 25-cv-741, 2025 WL 2733631, at *5–7 (D. Vt. Sept. 25, 2025). Notably, the court in that case did not stay the final order of removal in effect as to that petitioner pending the outcome of the visa process. Id. Petitioners here have not alleged the sort of interference at issue in Portillo Vasquez, nor is their request for relief limited to the form awarded in that case.

In sum, the Court has before it petitions for relief under 28 U.S.C. § 2241. This fact defines the scope of review and forms of relief available from this Court through this lawsuit. Petitioners understandably wish to have their U Visa application considered before their final order of removal is implemented, but this Court is not empowered via its habeas jurisdiction to grant the stay of removal they desire. Indeed, the INA prohibits this Court from doing so.[8] Though a challenge to the lawfulness of their custody is a question that would fall within this Court's habeas jurisdiction, the record does not support such a challenge here.

III. CONCLUSION

For the foregoing reasons, the consolidated petitions are DENIED, and the orders by this District Court staying Petitioners' removal pending consideration of the petitions are LIFTED.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[8] To the extent Petitioners wish to assert general civil (non-habeas) claims, they may do so by filing a civil complaint. Cf. Mayle v. Felix, 545 U.S. 644, 654–55 (2005) (discussing distinct rules and procedures applicable to habeas petitions and ordinary civil cases); 28 U.S.C. § 1914(a) (setting different filing fees for civil actions and habeas petitions); Gicharu v. Moniz, No. 23-cv-11672-MJJ, 2023 WL 5833115, at *2 (D. Mass. Sept. 8, 2023) (declining to convert habeas petition to civil action). The Court expresses no view on the merits of such claims, nor on the merits of any stay request directed to the First Circuit.